UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

JEREMY MARTIN HAAR

    Plaintiff,

v.

William K. Marshall III

Collette Peters

Jane Doe #1

John Doe #1

John Doe #2

Jane Doe #2

Amy Boncher

F. Bowers

B. Doby

Mr. Kosokowski

Mr. Henderson

Mrs. Chano

Dr. Sullivan

Mrs. Driscoll

Mr. Russell

Dr. Lawerence Churchville

Ms. Johnannsson

F. Fandreyer

    Defendants

Case No._____

## COMPLAINT WITH JURY DEMAND

### Introduction

This is a civil rights action filed by Jeremy Martin Haar, a federal prisoner for damages and injuctive relief under <u>Biveens v. Six Unknown Named Agents, 403 U.S. 388, 392-97, 91. S.Ct. 199 (1971)</u> alleging several claims of denial and delay of medical care and deliberate indifference to his serious medical needs in violation of the Eigth Amendment to the United States Constitution.

### Jurisdiction

1. The Court has jurisdiction over plaintiff's claims of violations of federal constitutional rights under 42 U.S.C. §1331 and §1343.

### Parties

1. The plaintiff Jeremy Martin Haar is a Fort Lee, New Jersey resident currently incarcerated by the United States Attorney General and held

at the Federal Medical Center in Devens, Massachusetts.

2. Defendant William K. Marshall III is the director of the Federal Bureau of Prisons.

3. Defendant Collette Peters is the former director of the Federal Bureau of Prisons.

4. Defendant Jane Doe #1 is the medical supervisor who approves or denies non-formular requests in the BOP central office.

5. Defendant John Doe #1 is the health service administrator for the Federal Bureau of Prisons's Health Services division.

6. Defendant John Doe #2 is the assistant director of the Federal Bureau of Prisons.

7. Defendant Jane Doe #2 is the health service administrator for the North East Region of the Federal Bureau of Prisons.

8. Defendant Amy Boncher is the Regional Director for the North East Region of the Federal Bureau of Prisons.

9. Defendant Bowers is the warden of FMC Devens.

10. Defendant Doby is the captain of FMC Devens.

11. Defendant Kosokowski is a associate warden of FMC Devens.

12. Defendant Henderson is a associate warden of FMC Devens.

13. Defendant Chano is a associate warden of FMC Devens.

14. Defendant Sullivan is the clinical director of FMC Devens.

15. Defendant Driscoll is the health service administrator of FMC Devens.

16. Defendant Russell is the assistant health services administrator of FMC Devens.

17. Defendant Churchville is a doctor at FMC Devens.

18. Defendant Johnannsson is a health service assistant at FMC Devens.

19. Defendant Fandreyer is a NP formally employed at FMC Devens.

20. All defendants have acted and/or continue to act under color of federal law at all times relevant to the complaint.

21. All defendants are sued in their individual capacities.

## Facts

1. On September 11, 2024 plaintiff Jeremy M. Haar was transfered to Federal Medical Center Devens.

2. Haar informed medical staff at FMC Devens upon arrival that he had outstanding orders for MRI, an EEG, as well as neurology and a prescription for topirimate.

3. Haar was told he should inform his physician when he saw them within the next two weeks but couldn't be provided with his prescribed topirimate in the mean time.

4. On September 18, 2024 plaintiff saw Dr. Mace-Leibson who placed orders for a MRI, EEG, and neurology as well as a non-formulary request to the Central Office for topirimate.

5. The non-formulary request was approved as well as the outside diagnostic appointmets approved and allegedly scheduled on or about September 19, 2024.

6. On November 5, 2024 Haar reported to sick call complaining of severe pain of his right foot and stated he believed it was athletes foot.

7. Despite acknowledging plaintiff was in pain and needed some form of treatment plaintiff was told he had to wait several days before being able to see the doctor and be prescribed a treatment and was sent back to his housing unit. Plaintiff was told by FMC Devens staff that this was how sick call worked and inmates were evaluated and then scheduled to see their physician days later.

8. On November 12, 2024 plaintiff was evaluated by FNP Adams, in response to his complaint over a week ago that he had athletes foot.

9. FNP diagnosed him with athletes foot and prescribed a anti-fungal cream called clotrimazole to treat it.

10. On January 8, 2025 plaintiff wrote an email to health services asking if dates had been scheduled for his MRI & EEG

11. Plaintiff received a response on January 8. 2025 from defendant Johannsson stating that the EEG had been submitted yet still had not been scheduled despite having been ordered and approved over 90 days prior.

12. On February 11, 2025 the MRI was performed on plaintiff over 120 days after it had been ordered and approved.

13. On March 5, 2025 plaintiff sent yet another email asking about the EEG that had been ordered and if it had been scheduled yet.

14. Defendant Fandreyer responded on March 10, 2025 stating that there was a date for the EEG.

15. On March 13, 2025 plaintiff was finally taken for the EEG that had been ordered and approved over six months prior.

16. On April 28, 2025 plaintiff was seen by a neurologist, Dr. Joy Burke who confirmed that Haar suffers from severe migraines.

17. Dr. Burke ordered that Haar continue his topomax however she prescribed rizatriptan 10mg prn, to take when migraine attacks occur in order to relieve the severe pain said attacks cause.

18. On July 14, 2025 plaintiff reported to sick call once again for complaints of foot pain and athletes foot.

19. Once again he was evaluated however not provided any treatment and told he would be scheduled to see hisprovider within two weeks.

20. Plaintiff on July 18, 2025 was seen by defendant Fandreyer who evaluated plaintiff's foot and prescribed another anti-fungal cream.

21. On August 4,2025 plaintiff was seen once again by Dr. Burke where he reported the rizatriptan had helpe treat the pain his migraine attacks cause however he was experiencing migraine attacks 8-9 times per month and therefore using it 8-9 times per month.

22. Dr. Burke ordered that plaintiff be provided with a CGRP mAb, as the topirimate was not working effectively nor had any of the BOP formulary treatments plaintiff had previously tried in the past.

23. Dr Burke recommended Ajovy 225 mg SO monthly and stated she would place the order in the computer for my provider to order.

24. On August 7, 2025 defendant Fandreyer ordered Ajovy 225mg and placed a non-formulary request.

25. On or about August 10,2025 defendant Jane Doe #1 denied plaintiff his prescribed medication, aka the Ajovy.

26. On August 19, 2025 plaintiff reported to health services sick call with complaints of severe testicular pain and a small "lump" which could potentially be a epididimal cyst.

27. Plaintiff was examined and it was observed that the lower area of his left testicle was swollen and painful when palpatated.

28. No other treatment was provided and plaintiff was informed that he would be scheduled to see his provider on August 25, 2025. in addition plaintiff was told if the pain got worse to report once again to sick call.

29. On August 24, 2025 plaintiff stated to the housing officer that he was in extreme pain and that he needed to go to medical.

30. The officer called medical and was told to tell plaintiff that he could wait until sick call in the morning.

31. The housing officer informed the nurse that Mr. Haar seemed to be in excrutiating pain and the nurse told him to send Haar to the infirmary.

32. When Haar arrived at the infirmary the two female nurses on duty refused to examine him due to the location of his pain and told him he had to wait until a male nurse returned.

33. Plaintiff Haar sat in the infirmary for over a hour bent over in excrutiating pain.

34. NP Rein returned to the clinc and upon arrival found Haar bent over in pain.

35. Haar informed him that he ha ( previously been to sick call and had been told that if the pain continued and or worsened to immediately report to sick call and he would most likely be sent to the hospital to be seen and make sure he did not have a testicular torsion.

36. Nurse Reid stated that he could not send plaintiff to the hospital as they did not have the staff to take him on such an emergency trip a problem known by all the administration at Devens (defendants Jane Doe #2, Bowers, Kosakowski, Chano, Henderson, and Marshall III).

37. Reid stated that he would call the doctor on call and see if he could provide plaintiff with a pain medication until the morning and then he should report to sick call again where they may at that time have enough staff to take him on an emergency medical trip.

38. After over an hour of waiting in excruciating pain Nurse Reid was able to reach a doctor on call and was approved to provide the plaintiff an injection of ketorolac (tramadol).

39. After the injection plaintiff was told to go back to his unit and return in the orning for sick call when the prison would have more staff.

40. On the morning of August 25,2025 plaintiff reported to A.M. sick call and described that he was in excruciating pain and that the previous nigght he had come to the clinic with unbearable testicular pain and that he had been provided ketorolac and told to come back this morning.

41. Plaintiff was examined by defendant Fandreyer and it was determineth that he needed to be taken to the emergency room due to his pain and the fact his testicle was swollen to ensure he did not have a testicular torsion.

42. Defendant was taken to the emergency room where it was reveiled that he had a epidemial cist and a vericocele.

43. The emergency room physician discharged him with instructions to see a uroloigist ASAP, as well as with a prescription for doxycyclene.

44. On or about August 25, 2025 plaintiff was approved for a outside consultation with a urologist and provided with his doxycyclene.

45. On August 26, 2025 plaintiff was seen by defendant Fandreyer who told plaintiff that she had placed an order for him to be taken to a urologist and that it could take anywhere from 1-5 months.

46. Plaintiff reported that he was still in severe pain and asked if he could be provided something for the pain. She stated that she could not provide him anything and that if it continued to take tylenol.

47. Plaintiff asked defendant Fandreyer if his Ajovy that the neurologist had ordered had been approved. She told him that defendant Jane Doe #1 had denied it and that he had to try several other medications before they would consider providing what the specialist had ordered and prescribed.

48. Plaintiff stated he had tried several of the other formulary medications before but that he would try another if it would help him be prescribed what

the specialist (Dr. Burke) had prescribed.

49. Defendant Fandreyer prescribed plaintiff Verapimil, a blood pressure medication and told plaintiff that if it did not work or caused side effects to report to sick call and they would try a different medication .

50. Plaintiff began taking verapimil and received no relief and still suffered several migraine attacks as well as dizzy spells, a side effect of the verapimil.

50. On September 19, 2025 plaintiff reported to A.M. sickcall due to the severe migraine attacks he was experiencing as well as the side effects of the verapimil.

51. Plaintiff was informe't that he was scheduled to see the doctor and that even if he stayed for sick call and was seen by a nurse he would not see his doctor before his next scheduled appointment and therefore there was really no reason to stay.

52. Plaintiff left sick call and decided to wait for his next appointment which he told was supposed to be in 1-2 weeks.

53. On September 24, 2025 plaintiff sent an email to health services asking when his appointment was to which they responded it was scheduled for September 30, 2025.

54. On September 30, 2025 a institutional recall occured which caused plaintiff to not be able to attend his appointment with his physician. Therefore plaintiff sent another email to health services asking as to when it would be rescheduled.

55. Plaintiff received a response from defendant Johannsson stating it was rescheduled tentatively for October 18, 2025, leaving the plaintiff without access to a physician for over three weeks.

56. On October 1, 2025 plaintiff sent an email to health services stating that the verapimil he was prescribed provided no relief and was causing him several side effects including diziness. Plaintiff requested that the prescription for Ajovy be sent to the central office once again and filled.

57. On October 1, 2025 plaintiff received a response from defendant Johannsson stating that I had a scheduled appointment and if I was unable to wait for said appointment I should report to sick call. Even though I had previously been told that even if I reported to sick call I would not see the physician until my scheudled appointment weeks away.

58. On October 3, 2025 plaintiff sent out several letters addressed to several BOP officials including the regional health service administrator (Jane Doe #2), health service administrator for the FBOP (John Doe #1), assistant

records were received and updated in the computerr, something he was told by FMC Devens nursing staff could take up to 30 days.

70. Plaintiff stated he needed the antibiotic immediately to treat his severe infection however the medical staff stated there was nothing they could do.

71. The next morning plaintiff reported to am pill line in hopes his antibiotic had been in fact ordered however he was told they still did not have the records and when plaintiff asked them to call the doctor's office and ask them to fax them over staff refused to do so.

72. On October 15, 2025 plaintiff sent an email to health services stating that medical claimed they did not have the order for the antibiotic as well as wanting to confirm that he would be sent back to the urologist in 3-4 weeks as ordered by the urologist.

73. On October 18, 2025 plaintiff received a response from defendant Johannsson who stated that they had still not received the report including the prescription for the antibitotic and that the reports can take some time to receive and enter into their medical record system.

74. On October 17, 2025 plaintiff who still had not been provided his prescribed antibiotic sent yet another email to health services asking if they had received the reports yet.

75. On October 20, 2025 defendant Johannsson stated that they still had yet to receive the reports.

76. On the evening of October 20, 2025 plaintiff notice that his right foot was extremely swollen, white, and was extremely painful to walk on.

77. On October 21, 2025 plaintiff reported to sick call and was told that he had a severe infection in his foot and was provided with a soft shoe and told to stay off his foot as much as possible.

78. Plaintiff stated that it was extremely painful to walk on it and requested he be provided with crutches or a wheelchair expescially if he was to stay off his foot however these were denied.

79. Plaintiff reported to the physical therapy department to receive the soft show he was ordered. Upon being provided the soft shoe Mr. Dautrich asked plaintiff if he could see the infection in his foot. When plaintiff showed him his foot and explained that he already had a prostate infection and that he had not been provided with the antibitoics that the doctor had ordered Mr. Dautrich stated that based on where the infection spread it was most likely caused by the plaintiff's untreated prostate infection.



80. Plaintiff was prescribed an antibitoic for his foot infection.

81. On October 21, 2025 plaintiff sent an email to helath services stating that he had been to sick call that morning and prescribed a soft show however walking on his foot as medical had refused to provide a wheelchair or crutches was extremely painful and asked if he could be temporarily provided with a wheelchair so he did not have to experience excruciating pain.

82. Plaintiff on October 22, 2025 spoke to defendants Chano, Henderson, and Bowers about the fact that he was being forced to walk on his foot despite the fact that it caused him extreme pain and that medical told him to stay off it. Plaintiff requested them to provide him a wheelchair or crutches to which they stated that they would look into it and reach out to my provider. In addition I informed the defendants that the medical department still had yet to provideme my prescribed antibiotic by the uroloigist and that they claimed that they still had not received the records from the doctor.

83. Defendants stated that they were aware of the issue that it can take weeks to receive medical records from the outside specialists however the common problem had not been fixed or addressed and that it was known by all medical department staff including defendants Sullivan, Driscoll, and Russell.

84. On October 23, 2025 plaintiff rececceived a response from defendant Johannsson who stated that he had a follow up with a provider on October 24, 2025 and that he should follow up with medical to be assessed if his foot was causing him pain.

85. On October 24, 2025 plaintiff saw Dr. Smith a doctor at FMC Devens who stated that if plaintiff's foot was painful when walking that he should be provided a cane.

86. When Dr. Smith called physical therapy to have a cane provided to plaintiff he was told that they were short staffed and unable to evaluate Haar to provide him one and that he would have to wait several weeks.

87. Plaintifin addition asked Dr. Smith to see if his Ajovy had been approved.

88. Dr. Smith informed Haar that once again Defendant Jane DOe #1 had refused plaintiff's non-formulary request thereby interferring with Haar's treatment once prescribed yet again.

89. On or about November 3, 2025 plaintiff spoke with defendants Kosavkowski Driscoll, and Russell during main line and informed them that his prescription for Ajovy was continuously being denied and asked them to reach out to Central office to have it approved as a neuorlogist prescribed it and severeal BOP

director of the FBOP (John Doe #2), and the director of the FBOP William K. Marshall III, all stating that he was being refused a medication that was prescribed to him by several BOP doctors and requesting that they provide it to him.

59. On Sunday October 12, 2025 plaintiff sent an email to defendant Driscoll stating that he was being refused a functional migraine treatment that had been ordered by a neurologist (Ajovy) and requesting that she help plaintiff obtain the medication that was ordered by a physician and that several BOP doctors agreed he needed.

60. On Monday October 13,2025 defendant Driscoll responded and stated that plaintiff had a appointment with a physician on October 14, 2025 and he could discuss the medicatioduring the visit.

61. On October 14, 2025 plaintiff was seen by Dr. Ruze a physician at FMC Devens. Dr. Ruze reviewed the recommendation of Dr. Burke for Ajovy and that defendant Jane Doe #1 had rejected it by claiming that plaintiff did not meet the non-formulary criterial.

62. Upon reviewing this claim it was discovered by Dr. Ruze that plaintiff did in fact meet the criteria as plaintiff was currently on a CCB (verapimil) which he reported as ineffective and did not tolerate, as well as prior use of 8 other formulary medications all with good compliance.

63. Dr. Ruze therefore resubmitted the non-formulary request and stated tyhat the Ajovy should be approved as none of the multitude of formulary agents the plaintiff had attempted provided any relief.

64. On or about October 20, 2025 defendant Jane Doe #1 once again denied plaintiff his doctor prescribed Ajovy, thereby knowingly interferring with the treatment prescribed by a doctor a direct sign of deliberate indifference.

65. On October 15, 2025 plaintiff was taken on a outside medical trip to a urologist.

66. At the urologist appointment plaintiff was prescribed an anti-biotic to treat a prostate infection and a copy of the prescription was provided to the prison in his medical record paperwork.

67. Upon returning to the prison plaintiff informed medical staff that he had been prescribed an antibiotic and asked when he would receive his first dose. Plaintiff was told to report to P.M pillline.

68. Plaintiff reported to PM pillline where he was told that there was no record of him being prescribed an antibiotic.

69. When plaintiff explained he had been to the outside urologist and was prescribed it there plaintiff was told he would have to wait until the

 

doctors had agreed it was necessary.

90. Defendants refused to reach out and stated that if Central rejected it there was nothing they could do.

91. As of the date of this complaint plaintiff has still not been provided with his prescribed medication and has reason to and does believe that this treatment is being denied by the BOP due to the fact that it is costly and is a new medication.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

92. Plaintiff has exhausted all administrative remedies available to him with respect to all claims and all defendants.

### CLAIMS FOR RELIEF

93. The actions of defendants William K. Marshall III, Peters, Doe #1, Doe #2, John Doe #1, John Doe #2, Boncher, Bowers, Doby, Kosokowski, Henderson, Chano, Sullivan, Driscoll, Russell, Churchville, Johannsson, and Fandreyer in refusing to provide plaintiff his prescribed treatment by a neurologist and thereby interferring with his treatment once prescribed , constitutes deliebrate indifference to plaintiff's serious medical eeds in violation of the Eigth Amendoment to the United States Constitution.

94. The actions of defendants in knowingly refusing prescribeld treatment for his prostate infection, constitutes deliebrate indifference to plaintiff's serious medical needs in violation of the Eigth Amendment to the United States Constitution.

95. The actions of defendants in knowingly maintaining a medical records system that takes weeks to receive medical records from outside providers and thereby delays necessary care for plaintiff, constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eigth Amenmment to the United States Constitution.

96. The actions of defendants in knowing failing to have an adequate medical staff, constitutes deliberate indifference to plaintiff's serious medical needs in vioolation of the Eigth Amendment to the United States Constitution.

97. The actions of defendants in refusing a treatment to plaintiff due to the cost of said treatment constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eigth Anendment to the United States Constitution.

### RTELIEF REQUESTED

WHEREFORE plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgement stating that:

1. The actions of defendants violated and continues to violate the plaintiff's rights under the Eigth amendment to the United States Constitution

B. Issue an injection ordering defendants or their agents to:

1. Immediately provide plaintiff with his prescribed medical treatment including Ajovy.

C. Award compensatory damages against all defendants

D. Award punitive damages against all defendants.

E. Grant such other relief as it may appear the plaintiff is entitled.

November 10, 2025

Respectfully Submitted,

Jeremy M. Haar

08518-509

FMC Devens

PO Box 879

Ayer, MA 01432

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that all statements and facts made in this complaint are true and correct to the best of my knowledge and ability.

Jeremy M. Haar